749 A.2d 796

**Faye LUMSDEN et al.**

v.

**DESIGN TECH BUILDERS, INC.**

**No. 112, Sept. Term, 1999.**

Court of Appeals of Maryland.

April 14, 2000.

Richard W. Lawlor (Richard W. Lawlor, P.A., on brief), Rockfield, for petitioners.

Peter I.J. Davis (Davis & Associates, on brief), Rockville, for respondent.

Argued before BELL, C.J. and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and THEODORE G. BLOOM (retired, specially assigned), JJ.

CATHELL, Judge.

Petitioners, Faye Lumsden, Ellen Hollander, Walter Leavell, Stephen Myers, Allan Zaic, and Colonel Ole P. Flaa, appeal from an order of the Circuit Court for Montgomery County granting summary judgment to respondent, Design Tech Builders, Inc. The appeal before this Court originated in the District Court of Maryland, which ruled that petitioners' claims based on the implied warranties codified in Maryland Code (1974, 1996 Repl.Vol., 1999 Cum.Supp.), section 10–203 of the Real Property Article were time-barred. The circuit court, in granting the motion for summary judgment below, agreed. Petitioners appealed to this Court for a writ of certiorari, which we granted. We shall affirm.

## I. Facts & Background

Between August of 1992 and March of 1994, petitioners and other homeowners in the Leighton Woods Development in Silver Spring, Maryland, individually entered into contracts with respondent to purchase residential dwellings, which included the installation of driveways.[1] The Washington metropolitan area was hit by a severe ice storm during the winter of 1994. In response to this storm, the twelve homeowners, through their homeowner's association, hired Cherry Valley Landscaping to conduct snow and ice removal services. On January 20, 1994, Cherry Valley Landscaping applied de-icing chemicals to the driveway surfaces to melt and remove the ice. In March of 1994, all twelve homeowners individually noticed that the surface of their driveways suffered from peeling and scaling.

The homeowners complained to respondent. There was an initial indication that the damage to the driveways had been caused by the application of de-icing chemicals by Cherry Valley Landscaping. However, in August of 1994, the homeowners discovered that the damage actually may have been caused by problems with the poured concrete used to construct the driveways. A seventeen-page report drafted by Professional Service Industries, Inc. indicated that the water-to-cement ratio of the core samples from three of the damaged driveways was very high, making the upper layer of the concrete soft and porous and susceptible to peeling and scaling. On August 11, 1994, Ms. Hollander sent a copy of this report to Mr. David Weiss, President of Design Tech Builders, Inc. The homeowners, through Ms. Hollander, then began to further investigate the cause of the defective concrete to determine whether the mixture of the concrete was improper or whether the pour of the concrete had been done incorrectly. In a letter to Ms. Hollander dated October 10, 1995, Mr. Jim

---

1. Ms. Lumsden consummated the purchase of her home on March 11, 1994, Ms. Hollander on September 30, 1992, Dr. and Mrs. Leavell on August 31, 1992, Mr. and Mrs. Myers on August 31, 1992, Mr. and Mrs. Zaic on December 12, 1993, and Colonel and Mrs. Flaa on November 17, 1992.

Mack, Director of Engineering & Rehabilitation of the American Concrete Pavement Association stated that the soft porous cement part of the one-half inch of the driveway surface indicates that the surface was over-finished or over-worked, which caused more water and less cement to the surface prior to the cement curing. In an additional letter to Ms. Hollander, dated October 25, 1995, Mr. Scott F. Wolter, President of American Petrographic Services, Inc., stated that the use of de-icing chemicals did not cause the scaling of the driveways and that the damage was the result of the high water-cement ratio of the concrete during curing. Colonel and Mrs. Flaa had a separate, independent report sent to them on March 28, 1995 stating that the problem with the driveway was caused by an improper pour and cure of the concrete. On April 21, 1995, the twelve homeowners sent a correspondence to respondent as a follow-up to their meeting in November of 1994, requesting that respondent correct the defect by replacement, repair, or otherwise.

On April 8, 1996, the twelve homeowners filed small claims actions in the District Court of Maryland sitting in Montgomery County, alleging that respondent, Design Tech Builders, Inc., had breached its implied statutory warranty against defects because the homeowners' driveway surfaces had become pitted and scaled. Respondent filed third-party complaints against two concrete subcontractors, the concrete supplier, the relevant homeowner association, and the snow removal service contracted with by the homeowner association. Respondent alleged that chemical de-icers, which the snow removal service had applied to the homeowners' concrete driveways, was the cause of the damage to the driveway surfaces.

The twelve consolidated actions were tried in the District Court on October 20, 1998. On November 2, 1998, the trial court ruled that the consolidated claims were time-barred by Maryland Code (1974, 1996 Repl. Vol.), section 10–204(d) of the Real Property Article. On December 31, 1998, after the denial of a Motion for Reconsideration, eleven of the twelve homeowners appealed to the Circuit Court for Montgomery

County for a trial de novo. On June 22, 1999, respondent filed an Entry of Appearance, an Answer, a Motion for Summary Judgment, and a Motion to Consolidate the eleven cases. The circuit court set September 2, 1999 as the hearing date for the Motion for Summary Judgment. After the scheduled hearing, the circuit court granted respondent's Motion for Summary Judgment and filed a Supplement to Oral Opinion on September 8, 1999. The circuit court agreed that petitioners' claims were time-barred.

Before this Court is a consolidated appeal by six of the homeowners, petitioners, from the order of the trial court granting summary judgment to respondent. We granted a writ of certiorari to address one issue:

Whether the two (2) year statute of limitations, pursuant to the Real Property Article [section] 10–204(d), commenced to run in March of 1994 following the winter thaw [when] the homeowners discovered scaling to their driveways or commenced in August of 1994 when the homeowners discovered that the driveway scaling was caused by a bad pour of concrete by the builder and not by ice melt applied during an ice storm in February [1994][.] [2]

---

**2.** In their briefs, the parties have presented three distinct questions using similar but not identical language:

    1. Did the Court err in granting Summary Judgment where [petitioners] are entitled to a Trial de Novo and there is a material dispute of fact?

    2. Does the one-year warranty of § 10–204(b)(1) or the two-year warranty for structural defect under § 10–204(b)(3) of the Real Property Article of the Maryland Annotated Code apply to the length of warranty for each of the Petitioners?

    3. Are the complaints of the Petitioners filed in the District Court of Maryland for Montgomery County time barred by § 10–204(d) of the Real Property Article of the Maryland Annotated Code because [petitioners] knew of the damage from scaling to their driveways by March of 1994 or did [petitioners] discover the cause of the damage in August of 1994 or as late as October of 1995?

This Court will address only the issue for which we granted the writ of certiorari. As a result we will not address issues one and two outlined in petitioners' brief. Our decision to do so will not affect the outcome of this case because our holding as to issue three would negate the need to address the first two issues had they been properly presented in the petition for writ of certiorari.

Pursuant to our evaluation of the "discovery rule," we hold that the running of the statute of limitations in the case *sub judice* commenced in March of 1994 when petitioners first discovered that their respective driveways had been damaged and not in August of 1994 when they discovered the purported cause of the damage. Accordingly, we affirm.

## II. Argument

■ The issue before this Court is quite simple: we must ascertain when the statute of limitations in respect to petitioners' breach of warranty causes of action began to run in order to determine whether petitioners' claims were filed in a timely manner. The controlling statutes are sections 10–203 and 10–204 of the Real Property Article.[3] Section 10–203 states in relevant part:

### § 10–203. Implied warranties.

(a) *Warranties which are implied.*—Except as provided in subsection (b) or unless excluded or modified pursuant to subsection (d), in every sale, warranties are implied that, at the time of the delivery of the deed to a completed improvement or at the time of completion of an improvement not completed when the deed is delivered, the improvement is:

(1) Free from faulty materials;

(2) Constructed according to sound engineering standards;

(3) Constructed in a workmanlike manner; and

(4) Fit for habitation.

(b) *Exception.*—The warranties of subsection (a) do not apply to any condition that an inspection of the premises

---

**3.** For the remainder of this opinion, any mention of section 10–203 or 10–204 refers to Maryland Code (1974, 1996 Repl.Vol., 1999 Cum. Supp.), section 10–203 and section 10–204 of the Real Property Article, respectively.

would reveal to a reasonably diligent purchaser at the time the contract is signed.

Section 10–204 provides in relevant part:

(b) *Expiration of warranty.*—Unless an express warranty specifies a longer period of time, the warranties provided for in this subtitle expire:

(1) In the case of a dwelling completed at the time of the delivery of the deed to the original purchaser, one year after the delivery or after the taking of possession by the original purchaser, whichever occurs first;

(2) In the case of a dwelling not completed at the time of delivery of the deed to the original purchaser, one year after the date of the completion or taking of possession by the original purchaser, whichever occurs first; and

(3) In the case of structural defects, 2 years after the date of completion, delivery, or taking possession, whichever occurs first.

. . . .

(d) *Limitations of actions.*—Any action arising under this subtitle *shall be commenced within two years after the defect was discovered or should have been discovered* or within two years after the expiration of the warranty, *whichever occurs first.* [Emphasis added.]

This Court has held that these two sections apply to driveways and thus are controlling in the case at bar. *See Andrulis v. Levin Constr. Corp.*, 331 Md. 354, 363–64, 628 A.2d 197, 201 (1993). Section 10–204(d) mandates that the period of limitations for a cause of action under this subtitle commences when the cause of action was discovered or should have been discovered. Therefore, we start our analysis by looking at the development of the "discovery rule" in relation to statutes of limitation in Maryland. As we said in *Pennwalt Corp. v. Nasios,* 314 Md. 433, 550 A.2d 1155 (1988):

Statutes of limitations have existed in Maryland and in other common law jurisdictions for hundreds of years. *See* Ferguson, *The Statutes of Limitation Saving Statutes,* 12–14 (1978). The statutes were enacted in an effort to balance

the competing interests of potential plaintiffs, potential defendants, and the public. The statutory period provided by a statute of limitations represents a compromise of these interests and "reflects a policy decision regarding what constitutes an adequate period of time for a person of ordinary diligence to pursue his claim." *Goldstein v. Potomac Electric Power Co.*, 285 Md. 673, 684, 404 A.2d 1064, 1069 (1979). By creating a limitations period, the legislature determined that a plaintiff should have only so long to bring his action before he is deemed to have waived his right to sue and to have acquiesced in the defendant's wrongdoing. Limitations statutes therefore are designed to (1) provide adequate time for diligent plaintiffs to file suit, (2) grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and (3) serve society by promoting judicial economy. *Pierce* [*v. Johns–Manville Sales Corp.*], 296 Md. [656,] 665, 464 A.2d [1020,] 1026 [ (1983) ].

Historically, the general rule in Maryland was that an action accrued on the date of the wrong. *Hahn v. Claybrook*, 130 Md. 179, 182, 100 A. 83 (1917). Under this rule it was irrelevant when the plaintiff discovered or should have discovered that the defendant had wronged him. The date of the wrong rule operated adequately in most tort actions because the plaintiff was aware of his injury and the defendant's wrongdoing almost immediately. Under those normal circumstances, the plaintiff had the full statutory period to pursue his claim.

We later recognized that the date of the wrong rule did not provide equitable results in all cases. Consequently, we created the "discovery rule" as an exception to the general rule.

*Id.* at 437–38, 550 A.2d at 1157–58. The discovery rule in Maryland has its origins in equity cases involving claims of fraud. The rationale was that the statute of limitations could not run until the victim became aware of the fraud. *See McDowell v. Goldsmith*, 2 Md. Ch. 370, 391 (1851) ("[I]n the cases of fraud and mistake, the Statute of Limitations begins

to run from time of the discovery of the fraud or mistake."). More recently, this Court re-applied this exception in medical malpractice cases. As we stated in *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A.2d 825 (1966):

> "The most modern view holds that the statute of limitations in a malpractice action does not commence to run until the negligence is discovered, or reasonably should be discovered. The discovery rule was probably first advocated in the case of *Hahn v. Claybrook,* [130 Md. 179, 100 A. 83,] which involved a discoloration of the skin through excessive doses of argentum oxide. The court followed the discovery rule, but held that the plaintiff should have discovered the injury more than three years prior to the commencement date of the action."

*Id.* at 143, 215 A.2d at 829 (quoting Note, *The Statute of Limitations in Actions for Undiscovered Malpractice,* 12 Wyo. L.J. 30, 34 (1957)). In *Waldman,* we ultimately held

> that the right of action for injury or damage from malpractice may accrue when the patient knows or should know he has suffered injury or damage. In many cases he will or should know at the time of or soon after the wrongful act that he has been the victim of negligent medical care; in other settings of fact it may be impossible for him, as a layman, unskilled in medicine, reasonably to understand or appreciate that actionable harm has been done him. If this is fairly the fact, we think he should have the statutory time from the moment of discovery, the moment he knows or should know he has a cause of action, within which to sue.

*Id.* at 145, 215 A.2d at 830. This holding effectively redefined the accrual point of a statute of limitations in medical malpractice cases to "when the plaintiff knows or should have known that he has a cause of action." *Pennwalt Corp.,* 314 Md. at 440, 550 A.2d at 1159. It did not take long for this Court to expand the use of the discovery rule beyond the scope of medical malpractice and into other professional malpractice cases. *See Leonhart v. Atkinson,* 265 Md. 219, 289 A.2d 1 (1972) (malpractice by accountant); *Steelworkers Holding Co.*

*v. Menefee,* 255 Md. 440, 258 A.2d 177 (1969) (malpractice by architect); *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A.2d 359 (1969) (malpractice by attorney); *Mattingly v. Hopkins,* 254 Md. 88, 253 A.2d 904 (1969) (malpractice by civil engineer). "Our basic rationale in these cases, like *Waldman,* was that it was inherently unfair to deprive a diligent plaintiff the opportunity to bring the suit when he did not, and could not, know he had been injured due to the negligence of another." *Pennwalt Corp.,* 314 Md. at 440, 550 A.2d at 1159.

In *Pennwalt Corp.,* 314 Md. at 442, 550 A.2d at 1160, we noted that "[t]he discovery rule finally evolved from the exception to the general rule in *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981)." We held in *Poffenberger,* 290 Md. at 636, 431 A.2d at 680:

> Having already broken the barrier confining the discovery principle to professional malpractice, and sensing no valid reason why that rule's sweep should not be applied to prevent an injustice in other types of cases, we now hold the discovery rule to be applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong.

*See also Vigilant Ins. Co. v. Luppino,* 352 Md. 481, 489, 723 A.2d 14, 17 (1999) ("Generally, a cause of action for breach of a contract accrues, and the statute of limitations begins to run, when the plaintiff knows or should have known of the breach."); *Doe v. Maskell,* 342 Md. 684, 690, 679 A.2d 1087, 1090, *cert. denied,* 519 U.S. 1093, 117 S.Ct. 770, 136 L.Ed.2d 716 (1997) ("[A] cause of action 'accrues' when plaintiff knew or should have known that actionable harm has been done to him."); *Hecht v. Resolution Trust Corp.,* 333 Md. 324, 334, 635 A.2d 394, 399 (1994) ("[T]his Court [has] adopted what is known as the discovery rule, which now applies generally in all civil actions, and which provides that a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong."); *Pierce v. Johns–Manville Sales Corp.,* 296 Md. 656, 668, 464 A.2d 1020, 1027–28 (1983) (noting that the discovery rule "affords a reasonably diligent person ... the full benefit of the statutory period in which to file suit, retains

some degree of protection of a potential defendant's right to repose, and promotes judicial efficiency.").

■ Having established that a cause of action accrues only when the claimant knows or should know of the wrong, we next addressed when the statute of limitations begins to run when the claimant's knowledge of the wrong is implied from the facts and circumstances of a particular case. A claimant reasonably should know of a wrong if the claimant has "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued." *Poffenberger*, 290 Md. at 637, 431 A.2d at 681 (alteration in original) (quoting *Fertitta v. Bay Shore Dev. Corp.*, 252 Md. 393, 402, 250 A.2d 69, 75 (1969)). We analyzed the meaning of this language in *O'Hara v. Kovens*, 305 Md. 280, 503 A.2d 1313 (1986):

> Under the discovery rule as stated in *Poffenberger* limitations begin to run when a claimant gains knowledge sufficient to put her on inquiry. As of that date, she is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation. *The beginning of limitations is not postponed until the end of an additional period deemed reasonable for making the investigation. . . .*
>
> From that date the statute itself allows sufficient time—three years—for reasonably diligent inquiry and for making a decision as to whether to file suit. *See Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 668, 464 A.2d 1020 (1983). This application of the discovery rule serves the legislative policy that underlies the statute of limitations, *id.* at 665, 464 A.2d 1020, and at the same time puts the discovery rule claimant on a par with the claimant who has actual knowledge at the time of the tort such as the normal automobile-accident plaintiff. The latter has three years from the date of the accident within which to investigate further, obtain expert opinion, discuss settlement, and file suit. The former is given the same time period within which to do these things, beginning from the date that

circumstances have put her to that inquiry which charges her with knowledge of the additional information that might be gleaned from a reasonably diligent investigation conducted within the three-year period. [Emphasis added.]

*Id.* at 289, 503 A.2d at 1317–18 (quoting *Lutheran Hosp. v. Levy*, 60 Md.App. 227, 237–38, 482 A.2d 23, 27–28 (1984)). As we summarized in *Pennwalt Corp.*, 314 Md. at 448–49, 550 A.2d at 1163–64:

Therefore, in simple terms, a plaintiff is only on inquiry notice, and thus the statute of limitations will begin to run, when the plaintiff has "knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[ ] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [tort]." *O'Hara*, 305 Md. at 302, 503 A.2d at 1324. In such a situation, should the plaintiff fail to seek out the facts supporting a cause of action, it can fairly be said that the plaintiff has inexcusably slept on his rights. *Accord Franzen v. Deere and Co.*, 377 N.W.2d 660 (Iowa 1985) (plaintiff who was injured when apron on floor of forage wagon suddenly moved, knew of injury and cause at the time it occurred, and could have discovered alleged defects at that time if investigation had been pursued). *But cf. Knaps v. B & B Chemical Co., Inc.*, 828 F.2d 1138 (5th Cir.1987) (although plaintiff suspected that defendant's soap caused skin disorder, diligent investigation did not reveal causal connection until several years later); *Stoleson v. United States*, 629 F.2d 1265 (7th Cir.1980) (although plaintiff suspected that exposure to nitroglycerin had precipitated her heart condition, the statute of limitations did not begin to run until medical science became aware of the causal relationship).

Applying the inquiry notice rule to the facts presented in *O'Hara*, and in light of the defendants' motion for summary judgment in that case, the defendants had the burden of proving that more than three years before filing suit *(1) the plaintiffs knew of facts sufficient to cause a reasonable person to investigate further, and (2) a diligent investiga-*

*tion would have revealed that the plaintiffs were victims of fraud, the alleged tort.* [Emphasis added.]

*See also Nasim v. Warden, Maryland House of Correction,* 64 F.3d 951, 955 (4th Cir.1995) ("[A] cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."), *cert. denied,* 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996); *Edwards v. Demedis,* 118 Md.App. 541, 566, 703 A.2d 240, 252 (1997) ("In sum, a cause of action accrues when (1) it comes into existence . . . and (2) the claimant acquires knowledge sufficient to make inquiry, and a reasonable inquiry would have disclosed the existence of the allegedly negligent act and harm."), *cert. denied,* 349 Md. 234, 707 A.2d 1328 (1998); *Doe v. Archdiocese of Washington,* 114 Md.App. 169, 188, 689 A.2d 634, 644 (1997) ("Once on notice of one cause of action, a potential plaintiff is charged with responsibility for investigating, within the limitations period, *all potential claims and all potential defendants* with regard to the injury." (emphasis added)); *Russo v. Ascher,* 76 Md.App. 465, 470, 545 A.2d 714, 716–17 (1988) ("[W]hen a plaintiff has knowledge of circumstances indicating that he may have been harmed, the law imposes a duty on that plaintiff to investigate whether in fact he has been harmed.").

The wording of section 10–204(d) is plain and unambiguous. The statute of limitations for a cause of action that arises under that subtitle must be commenced within two years after the defect was discovered, i.e., from the time that the claimant knows that a wrong, which has caused injury, exists. This is a codification of Maryland's modern discovery rule. The purpose is to put "the discovery rule claimant on a par with the claimant who has actual knowledge at the time of the tort." *O'Hara,* 305 Md. at 289, 503 A.2d at 1317 (quoting *Lutheran Hosp.,* 60 Md.App. at 238, 482 A.2d at 28). Thus, the clock for a statute of limitations begins to run when a claimant gains knowledge sufficient to put him or her on inquiry notice. From that date forward, a claimant will be charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation. The commence-

ment of the statute of limitations is not delayed until the conclusion of that diligent investigation: *"The beginning of limitations is not postponed until the end of an additional period deemed reasonable for making the investigation." Id.* (emphasis added).

Petitioners rely heavily on *Baysinger v. Schmid Products Co.*, 307 Md. 361, 514 A.2d 1 (1986); however, their reliance is flawed as the circumstances of that case are distinguishable from the facts of the case at bar. As we noted in *Baysinger*

the question of fact presented was: when did Mrs. Baysinger have knowledge of circumstances which would cause a reasonable person in her position to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the wrong? While the sparse record of facts before the trial judge demonstrated that Mrs. Baysinger's suspicions concerning the cause of her infection included the intrauterine device, it also showed that she initiated a preliminary investigation by discussing her suspicions with Dr. Cho, and that Dr. Cho told her he had "no way of determining whether her infection was caused by the Saf–T–Coil or by some other unrelated occurrence or instrumentality." The record further discloses that at that time Dr. Gallaher had no idea of what caused her illness, and consequently further investigation by way of inquiry of Dr. Gallaher would have been fruitless. We further note that while the record indicates that Mrs. Baysinger entertained various suspicions concerning the cause of her illness, there is no evidence that she then suspected, or reasonably should have suspected, wrongdoing on the part of anyone. Whether a reasonably prudent person should then have undertaken a further investigation is a matter about which reasonable minds could differ, and it was therefore inappropriate for resolution by summary judgment.

*Id.* at 367–68, 514 A.2d at 4. In *Baysinger*, when the plaintiff initially fell ill she did not know, nor did she have reason to know, that someone had committed her harm. She simply thought she was sick. In the case *sub judice*, petitioners knew immediately upon seeing the damage done to their

driveways that a defect existed for which someone was responsible. In *Baysinger*, the Court reasoned that the hidden cause of Mrs. Baysinger's condition created a factual question of whether a reasonably prudent person in her situation would have conducted an immediate, thorough investigation. In this case, the harm to petitioners was much more apparent, enough so that a reasonably prudent person would have begun investigating the cause of the harm. In fact, this is precisely what petitioners did beginning in March 1994. As we noted in *O'Hara*, 305 Md. at 289, 503 A.2d at 1317, the length of time it takes to conduct such an investigation does not delay the commencement of the statute of limitations until the investigation is concluded. By that standard, in the case *sub judice*, the petitioners' investigation into the cause of the damages did not delay the beginning of the running of the statute of limitations until August of 1994. All of the petitioners were aware that they had been wronged no later than March of 1994,[4] and nonetheless waited until April 1996, two years and one month after the discovery of the defects, to file a claim for damages in the District Court.[5]

We find additional support for our rationale in other jurisdictions. The Court of Appeals of Texas addressed a similar

---

**4.** Evidence in the record indicates that petitioners may have been aware that they had been wronged at an even earlier date. Ms. Hollander admitted to filing a complaint with respondent concerning the damaged driveways at some point prior to March of 1994. On the witness stand, Mrs. Flaa recalled telling her husband about problems with their driveway "sometime during the latter part of [1993], the fall perhaps." Ms. Leavell testified that she noticed a "crack at the end of her driveway" on August 31, 1992, the day she settled on her house.

**5.** It is for this reason that we do not need to address whether the one-year warranty of section 10–204(b)(1) or the two-year warranty for structural defects under section 10–204(b)(3) applies in the case *sub judice*. The two years and one month that petitioners waited to file their claim fell beyond the two-year statute of limitations that exists for either provision, *i.e.*, the *earlier* of the discovery of the defect or the expiration of the warranty. In this case, because the discovery of the defect commenced the running of the limitations period, the nature of the warranty is not really at issue. Thus, regardless of which warranty provision was controlling over the driveway damage, the petitioners' filing was too late.

set of facts in *Bayou Bend Towers Council of Co–Owners v. Manhattan Const. Co.,* 866 S.W.2d 740 (Tex.App.1993). In that case, the co-owners association initially brought suit for construction defects against the general contractor who had constructed the Bayou Bend Towers. On appeal, they challenged the trial court's granting of summary judgment contending that they had not been given a reasonable opportunity to discover the cause of the construction defects under the discovery rule. The co-owners association alleged "that although it was aware of the leaks in the complex, it was unable to discover that construction defects were the cause of those leaks." *Id.* at 742. The court ultimately held:

> [I]t is the discovery of the injury, and not the discovery of all of the elements of a cause of action that starts the running of the clock for limitations purposes. Here, all that is required to commence the running of the limitations period is the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible.

*Id.* at 743 (citation omitted); *see Roth v. G.D. Searle & Co.,* 27 F.3d 1303, 1308 (8th Cir.1994) ("[A]ctual knowledge of a causal relationship [between injury and its cause] is not required to begin the running of the statute of limitations."); *Resolution Trust Corp. v. Farmer,* 865 F.Supp. 1143, 1152 (E.D.Pa.1994) ("[A] person asserting a cause of action against another has a duty to use all reasonable diligence to inform himself of the facts and to institute the suit within the prescribed limitations period. Mere mistake, misunderstanding or lack of knowledge is insufficient to toll the running of the statute." (citing *Schaffer v. Larzelere,* 410 Pa. 402, 189 A.2d 267 (1963))); *Resolution Trust Corp. v. Walde,* 856 F.Supp. 281, 289 (E.D.Va.1994) ("A plaintiff aware of his injury is on 'inquiry notice' to discover his cause of action by use of 'ordinary diligence.' "); *Warren Consol. Schs. v. W.R. Grace & Co.,* 205 Mich.App. 580, 583, 518 N.W.2d 508, 510 (1994) ("A plaintiff need not be able to prove each element of the claim, nor may the claim be held in abeyance indefinitely until the plaintiff obtains professional assistance to determine the existence of

the claim."), *appeal denied,* 448 Mich. 870, 530 N.W.2d 750 (1995); *Benner v. J.H. Lynch & Sons, Inc.,* 641 A.2d 332, 338 (R.I.1994) ("Because plaintiff did not retain the services of a highway safety expert until ... approximately one month before the expiration of the statute of limitations ... and because this expert did not render his opinion to plaintiff until eighteen days after the expiration of the statute does nothing to toll the running of the statute.... A potential plaintiff is under an affirmative duty to investigate diligently a claim and is not allowed to use the discovery rule to postpone indefinitely the running of the statute of limitations."); *Ashey v. Kupchan,* 618 A.2d 1268, 1269 (R.I.1993) ("[T]he date that plaintiffs tracked down an expert to confirm their suspicions of negligence is not the operative discovery date."); *Tanyel v. Osborne,* 312 S.C. 473, 475, 441 S.E.2d 329, 330 (S.C.Ct.App. 1994) ("The statute of limitations ... begins to run when the plaintiff should know that he might have a potential claim against another person, not when the plaintiff develops a full-blown theory of recovery."); *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 344 n. 3 (Tex.1992) ("Generally, ... 'limitations begin to run when the fact of injury is known', not when the alleged wrongdoers are identified." (quoting *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990))); *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 754 (Tex.App.1995, writ denied) ("It is not necessary that a party know the details of the evidence by which to establish his cause of action for it is enough that he knows a cause of action exists in his favor.").

Another factually similar case was heard by the United States Court of Appeals for the Eighth Circuit. In *Grand Island Express v. Timpte Industries, Inc.,* 28 F.3d 73 (8th Cir.1994), the court also was reviewing the grant of summary judgment revolving around a statute of limitations and the discovery rule. In 1984, Grand Island Express purchased, from Timpte Industries, fifty-two refrigerated trailers which began to suffer from cracks and holes by 1986. Pursuant to the local discovery rule, Grand Island Express had until 1990 to file a claim. It did not file a claim until 1991 and contends

that the reason for not filing earlier was because it had been "misled by Timpte's assertion that the floor problems were caused by overloading and not by defects in materials or workmanship." *Id.* at 75. The court concluded;

> This is not a case in which the defendant attempted to conceal the plaintiff's cause of action or effected misleading repairs. Timpte merely disagreed with Grand Island as to the source of the floor problems and refused to concede the validity of Grand Island's warranty claim. "The time limit for filing suit is not extended by reason of the adversary's refusal to agree that the claim is valid."

*Id.* (quoting *Firestone & Parson, Inc. v. Union League of Philadelphia,* 672 F.Supp. 819, 822 (E.D.Pa.), *aff'd,* 833 F.2d 304 (3d Cir.1987)).

■ These out-of-state cases bolster our decision that, pursuant to the discovery rule, a statute of limitations generally is not delayed by any period of investigation to ascertain the precise cause of the injury. The statute of limitations begins to run when claimants gain knowledge sufficient to put them on inquiry notice generally when they know, or should know, that they have been injured by a wrong. From that date forward, a claimant will be charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation, regardless of whether the investigation has been conducted or was successful.

### III. Conclusion

We hold that the running of the statute of limitations in the case *sub judice* commenced in March of 1994 when petitioners first discovered a wrong, i.e., that their respective driveways were defective, structurally or otherwise, and not in August of 1994 when they discovered the purported cause of the problem. Their claims were therefore time-barred by section 10–204(d) of the Real Property Article.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; PETITIONERS TO PAY THE COSTS.**