WILLIAM TAYLOR ET AL. *v.* WINSTED MEMORIAL HOSPITAL ET AL.
(SC 16746)

Sullivan, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

*(Two justices concurring separately in one opinion)*

Argued November 25, 2002—officially released March 25, 2003

*Wesley W. Horton*, with whom were *Karen L. Dowd*, *Donna R. Zito* and, on the brief, *Kimberly A. Knox*, for the appellant (named defendant).

*Joshua D. Koskoff*, with whom was *Ruth Daniella Weissman*, for the appellee (named plaintiff).

*Opinion*

NORCOTT, J. The named defendant,[1] Winsted Memorial Hospital (hospital), appeals[2] from the judgment of the trial court denying the hospital's postverdict motions to set aside the jury's verdict in favor of the named plaintiff, William Taylor. The hospital claims that the trial court improperly concluded that General Statutes § 52-584[3] does not impose on a plaintiff a duty to investigate a potential claim of medical malpractice. Additionally, the hospital claims that the trial court improperly refused to instruct the jury that, based on the plaintiff's status as a health care professional, he had a heightened duty under § 52-584 to discover his claim of medical malpractice. We conclude that the

[1] The named plaintiff's claims against the defendant physicians, Richard Dutton, Yolanda Pena, Gregory Kresel and Glen Lovejoy, were all withdrawn prior to trial. The only defendant in this appeal, therefore, is the named defendant, Winsted Memorial Hospital. Additionally, the loss of consortium claim of the plaintiff Rosemary Taylor, the named plaintiff's wife, was also withdrawn prior to trial. Hereafter references to the plaintiff are to William Taylor.

[2] The hospital appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[3] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

trial court properly instructed the jury regarding the requirements of § 52-584 and that the trial court properly determined that there is no heightened duty for health care professionals to investigate potential claims of medical malpractice under the statute. Accordingly, we affirm the judgment of the trial court.

The plaintiff brought this medical malpractice action against the hospital alleging that it was negligent during the course of his medical care. The hospital subsequently filed a special defense asserting that the plaintiff's claim was barred by the applicable statute of limitations. At trial, the hospital requested that the jury be charged that the plaintiff had a duty to investigate whether the hospital had committed malpractice during the plaintiff's treatment.[4] The trial court denied the hospital's requested charge.[5] The jury, after answering a

[4] The hospital's request to charge provided: "If the [plaintiff] did not in fact discover the actionable harm but would have discovered it if [he] exercised reasonable care, then you should hold [him] to the standard of reasonable discovery, not just actual discovery. For instance, if you find that the [plaintiff] reasonably should have investigated [his] claim or hired [his] attorneys sooner, and that if [he] had done so [he] would have known about the actionable harm sooner, then you should make your decision based on what [he] reasonably should have done under the circumstances."

[5] The trial court's instruction on the statute of limitations defense provided: "The [hospital] claims that the plaintiff's action is barred by the statute of limitations. Now the [hospital] has a burden of proving by a preponderance of the evidence each of the elements of the special defense. The statute of limitations that is applicable to this action provides that a person must bring an action within two years from the date that he discovers or in the exercise of reasonable care should have discovered that he has suffered actionable harm.

"Actionable harm occurs when the plaintiff discovers or in the exercise of reasonable care or should have discovered the essential elements of a cause of action.

"Now, therefore, in order to establish that the plaintiff has discovered or reasonably should have discovered that he suffered actionable harm, the [hospital] must prove that the plaintiff discovered or should have discovered first, that the [hospital] was negligent and second, that the [hospital's] negligence was a proximate cause of his injuries.

"In the present case, I instruct you that this lawsuit was filed on March 6, 1996. In order for the [hospital] to prevail on the statute of limitations it

set of interrogatories, returned a verdict in favor of the plaintiff in the amount of $800,000. The trial court denied the hospital's motions to set aside the verdict, for remittitur and for judgment notwithstanding the verdict, and rendered judgment for the plaintiff. This appeal followed.

The jury reasonably could have found the following facts. On March 9, 1993, the plaintiff suffered from a sore neck while at work as a nurse anesthetist at the hospital. The pain increased throughout the day and, after having difficulty sleeping because of the pain, the plaintiff visited the emergency room at the hospital in the early morning of March 10, 1993. While in the emergency room, the plaintiff was examined by a physician, Gregory Kresel, who suggested that the plaintiff undergo a computerized axial tomography (CAT) scan. After undergoing the CAT scan, the plaintiff subsequently was discharged from the hospital by another emergency room physician, Glen Lovejoy. The discharge papers indicated that the CAT scan had revealed a possible brain bulge, cerebral edema and cervical arthritis. Also, upon being discharged, the plaintiff was prescribed medication that he knew was used to reduce brain swelling.

After being discharged from the emergency room, the plaintiff returned to his home. Thereafter, on March 12, 1993, the plaintiff awoke and noticed strange temperature sensations in his hands. Subsequently, the plaintiff realized that he was unable to hold a pen or write, and he experienced other subtle changes in motor control functions. At that time, the plaintiff returned

must prove by a preponderance of the evidence that [the plaintiff] discovered or should have discovered through the exercise of reasonable care prior to March 6, 1994, that the [hospital] was negligent in its treatment of him on March 10, 1993, and further that he discovered or should have discovered by March 6, 1994, that this negligence of the [hospital] was a proximate cause of the stroke that he suffered on March 12, 1993."

to the emergency room of the hospital where Lovejoy ordered another CAT scan. The plaintiff was then admitted to the hospital and, on March 16, 1993, the plaintiff was told by a neurologist, Yolanda Pena, that he had suffered a stroke on March 12.

After being released from the hospital, the plaintiff underwent physical and occupational therapy at various rehabilitation facilities for the injuries he had sustained as a result of the stroke. The plaintiff testified that he did not question the care he had received at the hospital until 1995, when he read two magazine articles regarding the treatment of strokes. As a result of reading those articles, the plaintiff, in October, 1995, sought legal counsel regarding the treatment he had received at the hospital. The plaintiff also testified that the first time that he read his emergency room record from March 10, 1993, was when he met with his legal counsel. That record revealed that Lovejoy had recorded his diagnosis of the plaintiff as including "possible [cerebrovascular accident] CVA." The plaintiff testified that this was his "first clue" that he actually may have had a stroke on March 10, and the hospital had not diagnosed it properly. Thereafter, on March 6, 1996, the plaintiff filed the action in the present case, alleging that the hospital was negligent in its treatment and diagnosis of him.

I

The hospital first claims that the trial court improperly refused to give its requested jury instruction stating that § 52-584 imposes on a plaintiff a duty to investigate a potential claim of malpractice. The plaintiff claims, in response, that the trial court's instruction was proper and followed the requirements of the statute. We agree with the plaintiff and conclude that § 52-584 does not explicitly impose a duty to investigate. Instead, § 52-584 requires that the jury consider all the facts and circumstances of the case in order to determine the

"date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . ."

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Ancheff* v. *Hartford Hospital*, 260 Conn. 785, 811, 799 A.2d 1067 (2002).

The dispute among the parties also raises an issue of statutory interpretation, namely, whether § 52-584 implicitly includes a duty on the plaintiff to investigate a potential claim of malpractice. We recently articulated our process of statutory interpretation in *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this

process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 577–78.

Turning to the merits of the issue before us, § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by . . . malpractice of a . . . hospital . . . shall be brought but within two years from the date when the injury is first sustained or discovered *or in the exercise of reasonable care should have been discovered* . . . ." (Emphasis added.) Thus, under the statute, an injured party must bring an action within two years of the time when he or she discovered or, in the exercise of

reasonable care, should have discovered, the injury. "In this context an injury occurs when a party suffers some form of actionable harm." *Burns* v. *Hartford Hospital*, 192 Conn. 451, 460, 472 A.2d 1257 (1984). As we previously have stated: "A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence. . . . They are therefore necessary ingredients for 'actionable harm.' Consequently, the [plaintiff] did not have an 'injury' as contemplated by the statute until she discovered or in the exercise of reasonable care should have discovered a causal relationship between the defendant's allegedly negligent diagnosis . . . and subsequent lack of treatment, and the metastasis of her cancer which she discovered [later]. Only then did she sustain 'actionable harm.' " (Citations omitted.) *Catz* v. *Rubenstein*, 201 Conn. 39, 44, 513 A.2d 98 (1986). "The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." (Internal quotation marks omitted.) Id., 47.

As the preceding analysis reveals, a plaintiff's claim of medical malpractice will accrue once he or she discovers, or in the exercise of reasonable care should have discovered, that he or she suffered an actionable harm. The plain language of the statute does not, therefore, impose any specific affirmative duty on the plaintiff to investigate a potential claim of malpractice. Rather, the sole inquiry, in this context, is whether, in light of all relevant circumstances, the plaintiff exercised reasonable care in the discovery of his or her injury.

Additionally, nothing in the legislative history supports the hospital's claim that the statute implies an affirmative duty to investigate. At the time of the passage of § 52-584, the focus of the debate on the statute of limitations centered around the ability of plaintiffs to

bring stale claims. See Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1957 Sess., p. 154. When the statute subsequently was amended to make the statute of limitations two years rather than one, the focus again was on the ability of plaintiffs to bring old claims and the detriment that would cause to defendants. See 13 H.R. Proc., Pt. 5, 1969 Sess., p. 2388. The debate at this time also centered around the effect that the increase in time in which a plaintiff has to bring a claim would have on the dockets of the courts. See 13 S. Proc., Pt. 5, 1969 Sess., pp. 2056–63. There is but one brief reference to the nature of the specific language at issue in the present case, namely, the statute's requirement that actions be brought within the time the plaintiff "in the exercise of reasonable care should have . . . discovered" the injury. General Statutes § 52-584. In discussing why the enlargement of the statute of limitations period would not clog the courts' dockets, Senator T. Clark Hull stated: "The second major reason is, we know more and more, now, that many many claims are not readily apparent. *Now, there's an exception in the statute, when the injury was apparent or should have been known, now this is [a] very hard burden to get over.* And there are all sorts of back injuries, nerve injuries some [e]motional injuries." (Emphasis added.) 13 S. Proc., supra, p. 2060. From this brief legislative history, it is apparent to us that the legislature believed that the "exercise of reasonable care" language contained in § 52-584 offered sufficient protection against the risk of plaintiffs bringing stale claims against defendants who may no longer have in their possession the evidence required to defend the claim properly. Therefore, to the extent that the legislative history is informative to the issues in this appeal, we do not think that the legislature intended that the statute implicitly impose any affirmative duty on the plaintiff to investigate a potential claim of medical mal-

practice. Rather, the sole inquiry is whether the plaintiff exercised reasonable care in discovering his or her injury.

In this regard, the trial court's instruction clearly articulated the standard contained in the statute, namely, the exercise of reasonable care. The instruction also expressly outlined what the jury would be required to find in order for the hospital to prevail on its statute of limitation defense. Specifically, the trial court instructed the jury as follows: "In order for the [hospital] to prevail on the statute of limitations it must prove by a preponderance of the evidence that [the plaintiff] discovered or should have discovered through the exercise of reasonable care prior to March 6, 1994, that the [hospital] was negligent in its treatment of him on March 10, 1993, and further that he discovered or should have discovered by March 6, 1994, that this negligence of the [hospital] was a proximate cause of the stroke that he suffered on March 12, 1993." The trial court's charge outlined the elements that the hospital was required to establish, and gave guidance to the jury in its determination of whether the hospital satisfied its burden of proof. Because the trial court's instruction appropriately articulated the standard of § 52-584, it was proper.[6]

The hospital claims, however, that its requested charge was consistent with the Appellate Court's decision in *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000). In *Mountaindale*

---

[6] The hospital claims that merely reading the "discovered or . . . should have been discovered" language of § 52-584 without explanation was not an appropriate instruction because it did not adequately explain the law to the jury. We disagree. Juries frequently decide factual questions regarding the exercise of reasonable care. In fact, the jury's definition of reasonable care is often precisely the issue in negligence cases. Thus, when read as a whole and within the context of the entire charge, we conclude that the trial court's instruction was proper.

*Condominium Assn., Inc.*, the Appellate Court concluded that the concern of the president of the plaintiff's board of directors regarding the noncompliance of the builder with building codes, evidenced in a memorandum to the property manager of the plaintiff regarding the lack of fire walls in the attics of the condominium's units, was sufficient to require the plaintiff to "make reasonable efforts to discover whether there were building code violations and bring an action within the time frames of the statutes of limitations." Id., 327. The hospital points to this language in support of its claim that the plaintiff here had an affirmative duty to investigate a potential claim of negligence or medical malpractice.

In *Mountaindale Condominium Assn., Inc.*, however, the Appellate Court merely determined that the *exercise of reasonable care* required the plaintiff to pursue a possible claim once it realized there had been actionable harm. Id. The Appellate Court did not, as the hospital suggests, create a new duty on plaintiffs to investigate potential claims of negligence prior to the realization that any injury has occurred. The hospital's reliance on *Mountaindale Condominium Assn., Inc.*, therefore, is misplaced.

The hospital also relies on various out-of-state cases for its proposition that a duty to investigate should be implied in § 52-584. Specifically, the hospital points to *Graham* v. *Hansen*, 128 Cal. App. 3d 965, 180 Cal. Rptr. 604 (1982). In *Graham*, the plaintiff suffered a perforated esophagus after undergoing a medical procedure, which, her doctor assured her, would take approximately one-half hour. Id., 973. As a result of her injury, the plaintiff spent months in the hospital, and was informed of the error that occurred during the procedure, which led to her long stay at the hospital. Id. The plaintiff also admitted that she had suspicions that her doctor had committed malpractice, but did not seek any legal advice until almost one year after she had

discontinued the doctor-patient relationship with her doctor. Id.

The court in *Graham*, analyzing the case under a statute that required a plaintiff to bring an action "one year after the plaintiff discover[ed], or through the use of reasonable diligence should have discovered, the injury"; id., 972; determined that, the facts of that specific case were "sufficient to place a reasonable person on inquiry as to the probability of actionable conduct on the part of [the] defendants." Id., 973.

Put differently, in *Graham*, the court determined that, on the facts as the plaintiff knew them to be, as a matter of law, she did not exercise reasonable care in bringing her cause of action after the discovery of her injury. Id., 972–73. Thus, the inquiry was whether a reasonable person would have been put on notice of a potential malpractice claim with all the facts known to the plaintiff at that time. Id., 973. We, therefore, do not interpret *Graham* to require a plaintiff to affirmatively investigate a claim of malpractice before any information that would put a reasonable person on notice that such a claim might exist. In this regard, then, *Graham* is similar to what our statute requires, namely, that the plaintiff exercise reasonable care in the discovery of actionable harm.[7]

---

[7] The hospital also relies on *Lumsden* v. *Design Tech Builders, Inc.*, 358 Md. 435, 749 A.2d 796 (2000), for the proposition that we should read into § 52-584 an affirmative duty on plaintiffs to investigate their potential claims of malpractice. The statute involved in *Lumsden*, allowed breach of warranty claims for construction defects, but only if commenced "within two years after the defect was discovered or should have been discovered or within two years after the expiration of the warranty, whichever occurs first." Id., 441. The court, after explaining that jurisdiction's reliance on the "discovery rule," determined that "[a] claimant reasonably should know of a wrong if the claimant has knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued." (Internal quotation marks omitted.) Id., 445. Finally, the court upheld the defendant's motion for summary judgment based on the statute of limitations because the statute of

In the present case, however, the plaintiff testified, and the jury reasonably could have believed, that he was not aware of any causal connection between the medical treatment he received by the hospital on March 10, 1993, and the injuries he suffered from his subsequent stroke, until he read articles about the treatment of strokes in a magazine. Thereafter, the plaintiff diligently sought legal counsel and filed the present action within three years from the date the injury actually occurred. Thus, because the determination of reasonable care is a question of fact, it was up to the jury to determine whether the plaintiff exercised reasonable care in the discovery of his injury. Because reasonable care is all our statute requires, the trial court's instruction noting the requirements of the statute and outlining what the hospital was required to establish in order to prevail on its statute of limitations defense was proper.

## II

The hospital next claims that the plaintiff, as a certified nurse anesthetist, had a heightened duty under § 52-584 to discover his claim for malpractice. The plaintiff responds that the trial court properly rejected a height-

---

limitations began to run when the plaintiffs gained knowledge "sufficient to put them on inquiry notice generally when they know, or should know, that they have been injured by a wrong." Id., 452. After that time, the plaintiffs were charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation. Id.

While at first blush, the cases on which the hospital relies seem persuasive, they do not reflect Connecticut's law, which merely requires that a plaintiff exercise reasonable care. Put differently, § 52-584 requires that the plaintiff exercise reasonable care in the discovery of his or her injury, while the statute at issue in *Lumsden* puts the plaintiff on inquiry notice when the plaintiff has in his or her possession all the relevant facts that would require a reasonable person to investigate. Because nothing in § 52-584 evidences an intent by our legislature to put plaintiffs on inquiry notice when certain facts are available to them, we find the hospital's reliance on *Lumsden* unpersuasive. Rather, the sole inquiry under § 52-584 is whether, in light of all relevant circumstances, the plaintiff exercised reasonable care in the discovery of actionable harm.

ened standard of discovery for him. We agree with the plaintiff and conclude that the statute does not impose a heightened standard of discovery on health care professionals regarding the discovery of actionable harm.

As discussed previously in this opinion, § 52-584 requires that the plaintiff bring his or her claim for medical malpractice within two years of when he or she discovered or, in the exercise of reasonable care, should have discovered, the injury. The hospital has not offered, and we are not aware of, anything in the statute, legislative history or our case law that would impose a heightened duty on health care professionals to discover a claim of potential malpractice. We, therefore, do not find persuasive the hospital's argument that the statute implicitly requires health care professionals, because of their experience in the health care field, to discover their claims of malpractice earlier than persons who are not healthcare professionals. If the hospital disagrees with our conclusion that the statute does not prescribe a heightened standard for health care professionals, its remedy lies with the legislature, not this court. See *State* v. *Angel C.*, 245 Conn. 93, 120, 715 A.2d 652 (1998) ("[i]f the defendants disagree with the legislative conclusion of which class of juveniles presumptively should be tried as adults, their remedy lies with the legislature, not this court").

We also note that the jury in the present case was aware of the plaintiff's education and experience as a nurse anesthetist and could have considered those facts in deciding whether the plaintiff exercised reasonable care in discovering actionable harm. The trial court appropriately did not instruct the jury to disregard the plaintiff's status as a health care professional. Moreover, the hospital argued to the jury that because of the plaintiff's profession, he should have discovered his

claim earlier.[8] Apparently, the jury did not agree with the hospital's argument. We will not, therefore, disturb the jury's finding by concluding that the statute includes a heightened standard of discovery for health care professionals.

The judgment is affirmed.

In this opinion PALMER and VERTEFEUILLE, Js., concurred.

SULLIVAN, C. J., with whom ZARELLA, J., joins, concurring. I agree with the majority's conclusion. I disagree, however, with the majority's approach to statutory interpretation. My view on the appropriate method of statutory interpretation continues to be the same as set forth in my concurrence in *Mandell* v. *Gavin*, 262 Conn. 659, 672, 816 A.2d 619 (2003), and in the dissenting opinion by Justice Zarella, in which I joined, in *State* v. *Courchesne*, 262 Conn. 537, 597, 816 A.2d 562 (2003).

---

[8] During closing argument, counsel for the hospital stated: "We, indeed, have pleaded statute of limitations in this case. The law provides that in a medical [mal]practice case like this one, plaintiffs have to bring suit within two years of when they discover or reasonably should have discovered actionable harm. Should have discovered actionable harm.

"In other words, potential plaintiffs just can't shut their eyes and put their hands over their ears if they have reason to think they've been wrong. They've got to investigate their claim[s] so that the person whom they're targeting gets fair notice and is able to marshal a defense. . . .

"When you're considering that issue, keep in mind that [the plaintiff] was an advanced practice registered nurse with numerous contacts in the medical profession. Judging from the disability form that he filled out, which I passed around to you . . . [h]e knew in May of 1993 he had a lot of detail about what was done for him in the hospital in March of 1993. And keep in mind that [the plaintiff's] wife, who has training as a nurse—she's not a nurse—but she had about a year, she said, which is quite lot of time was obviously unhappy with his medical care."