******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

DELORES PEEK *v.* MANCHESTER
MEMORIAL HOSPITAL ET AL.
(SC 20414)

Robinson, C. J., and McDonald, Mullins, Kahn and Ecker, Js.*

*Syllabus*

Pursuant to the statute ((Rev. to 2015) § 52-584) setting forth the limitation period for actions brought against hospitals for negligence or medical malpractice, among other actions, such actions may not be "brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . ."

The plaintiff sought to recover damages from the defendant hospital and its holding company for negligence for injuries she sustained while admitted to the hospital. On February 10, 2015, the plaintiff, while on fall prevention protocol, fell while using the restroom and sustained injuries to her shoulder and neck. She was discharged from the hospital two days later. On April 6, 2015, while receiving follow-up care at her physician's office, a staff member in that office informed the plaintiff that a nurse or nurse's aide should have been responsible for her safety while she was an inpatient at the hospital. On May 22, 2017, the plaintiff delivered the present action to the state marshal for service of process. Subsequently, the defendants filed a motion for summary judgment, claiming that the plaintiff's action was barred by the two year statute of limitations set forth in § 52-584. The trial court granted the defendants' motion, reasoning that the plaintiff suffered actionable harm from the fall and injuries on February 10, 2015, and, having received a statutory ((Rev. to 2015) § 52-190a (b)) ninety day extension of the two year limitation period set forth in § 52-584, should have commenced her action on or before May 10, 2017. The trial court thus determined that the plaintiff's action was time barred insofar as she commenced her action on May 22, 2017. The plaintiff appealed from the trial court's judgment in favor of the defendants, and the Appellate Court reversed the trial court's judgment. The Appellate Court, relying on this court's decision in *Lagassey* v. *State* (268 Conn. 723), construed the term "injury," for purposes of § 52-584, as synonymous with "actionable harm," which occurs when the plaintiff discovers or should have discovered that the harm complained of was caused by the negligence of the defendant. The Appellate Court concluded that the trial court should not have granted the defendants' motion for summary judgment because the evidence demonstrated a genuine issue of material fact as to when the plaintiff discovered her injury as contemplated by § 52-584. On the granting of certification, the defendants appealed to this court. *Held* that the Appellate Court correctly concluded that, viewing the facts in the light most favorable to the plaintiff, there was a genuine issue of material fact regarding whether the plaintiff commenced her action within two years from the date of her "injury," as that term is understood in the context of § 52-584, and, accordingly, the Appellate Court properly reversed the trial court's judgment: Connecticut case law was clear that the term "injury," as used in § 52-584, means "actionable harm," which occurs when the plaintiff discovers or should have discovered that the harm complained of was caused by the negligence of the defendant, and the fact that the plaintiff averred that she did not know the cause of her fall or that the defendants were responsible for her safety while she was an inpatient at the hospital until April 6, 2015, was sufficient to create a genuine issue of material fact regarding when her actionable harm occurred; moreover, there was no merit to the defendants' claim that, because the plaintiff's physical injuries from her fall were obvious, the Appellate Court improperly applied failure to diagnose or latent injury cases to the facts of this case, as the definition of "actionable harm" established in *Lagassey* and its progeny was applicable to all actions subject to § 52-584, regardless of whether the physical harm was obvious or latent; furthermore, the defendants could not prevail on their claim that the Appellate Court should have relied on this court's

decision in *Burns* v. *Hartford Hospital* (192 Conn. 451), in which the plaintiff sustained obvious injuries, like the plaintiff in the present case, and in which the court determined that the limitation period set forth in § 52-584 began to run when the plaintiff sustained his injuries, as the plaintiff in *Burns*, unlike the plaintiff in the present case, became aware of the connection between his injuries and the defendants' negligence at the time that the injuries were sustained; in addition, contrary to the defendants' claim that, because *Lagassey* was decided after the statute (§ 1-2z) embodying the plain meaning rule became effective, the court in *Lagassey* improperly neglected to apply that rule and, pursuant to that rule, should have interpreted the term "injury" in § 52-584 to mean "hurt, damage, or loss sustained," the court in *Lagassey* simply restated and followed this court's long-standing interpretation of "injury" for purposes of § 52-584 as actionable harm, this court saw no reason to abandon that long-standing interpretation in the present case, as the legislature, in enacting § 1-2z, did not intend for this court to overrule its prior interpretations of statutory language in cases decided prior to the enactment of § 1-2z, and the doctrine of stare decisis and the tenet of statutory interpretation that cautions against overruling case law involving this court's construction of a statute, if the legislature reasonably may be deemed to have acquiesced in that construction, as in the present case, counseled against accepting the defendants' invitation to revisit *Lagassey*'s interpretation of § 52-584.

Argued November 17, 2020—officially released February 2, 2022**

### *Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Cobb, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed; thereafter, the Appellate Court, *Alvord, Moll* and *Bear, Js.*, reversed the trial court's judgment and remanded the case for further proceedings, and the defendants, on the granting of certification, appealed to this court. *Affirmed.*

*Sean R. Caruthers*, with whom, on the brief, was *Michael D. Neubert*, for the appellants (defendants).

*Neil Johnson*, for the appellee (plaintiff).

*Opinion*

MULLINS, J. The defendants, Manchester Memorial Hospital and Prospect Medical Holdings, Inc., appeal from the judgment of the Appellate Court, which reversed the judgment of the trial court and concluded that a genuine issue of material fact exists as to whether the action of the plaintiff, Delores Peek, was barred by the two year statute of limitations set forth in General Statutes (Rev. to 2015) § 52-584.[1] We conclude that a genuine issue of material fact exists regarding whether the plaintiff initiated her action within two years from the date of her injury, as that term is understood in the context of § 52-584. Therefore, we affirm the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following relevant facts from the record, viewed in the light most favorable to the plaintiff as the nonmoving party. "On January 30, 2015, the plaintiff was admitted to Manchester Memorial Hospital with a medical diagnosis of [C. diff] diarrhea. On or about that date, she was assessed at the hospital and found to be at risk for falling. She was placed on 'fall prevention protocol' and required assistance to leave her hospital bed. On February 10, 2015, the plaintiff fell while using the restroom and sustained injuries to her shoulder and neck, for which she received medication and treatment. She 'was unaware,' on the date of her fall, 'what was the cause of [her] fall.' The plaintiff left the hospital on February 12, 2015, and received follow-up care through December 10, 2015, on which date she underwent neck surgery. On or about April 6, 2015, staff at the office of the plaintiff's doctor informed the plaintiff that 'a nurse or nurse's aide should have been responsible for [her] safety while inpatient at [the hospital].'

"On November 22, 2016, the plaintiff received an automatic ninety day extension of the statute of limitations pursuant to General Statutes [Rev. to 2015] § 52-190a (b).[2] The plaintiff delivered the action to the state marshal for service of process on May 22, 2017. In her one count complaint, the plaintiff alleges that her fall resulted from the defendants' negligence in 'fail[ing] to exercise the degree of care, skill, and diligence ordinarily exercised by hospitals engaged in the treat[ment] of patients . . . on . . . fall prevention protocol . . . .' On July 26, 2017, the defendants filed an answer and a special defense alleging that the plaintiff's claim was barred by the statute of limitations in § 52-584. On July 31, 2017, the plaintiff filed her reply to the special defense, stating therein: 'The plaintiff . . . denies any and all allegations of the defendants' special defense in its entirety . . . .'

"On September 13, 2017, the defendants filed a motion for summary judgment, maintaining that the plaintiff's action was barred by the statute of limitations

in § 52-584. The documents submitted with the defendants' motion and memorandum of law in support of their motion were the plaintiff's certificate of good faith pursuant to § 52-190a and attached written opinion letter, the plaintiff's request for an extension of the statute of limitations, the state marshal's return of service, the defendants' answer and special defense, and the plaintiff's reply thereto.

"On December 29, 2017, the plaintiff objected to the motion for summary judgment, arguing . . . [inter alia, that] the statute of limitations did not begin [to run] until April 6, 2015, on which date she claimed that she 'learned that she was on fall risk protocol and that while on fall risk protocol that the hospital was required to provide her assistance whenever she left her bed.' She argued that she 'was not aware that the defendants' conduct or lack thereof was the cause of her injury until she was informed by the defendant provider on or about April 6, 2015.' The plaintiff attached to her opposition memorandum her affidavit averring that she 'was unaware,' on the date of her fall, 'what was the cause of [her] fall.' She further averred that staff at her doctor's office informed her on April 6, 2015, that 'a nurse or nurse's aide should have been responsible for [her] safety while inpatient at [the hospital].' The defendants did not file a reply memorandum.

"On January 2, 2018, the court granted the defendants' motion for summary judgment [and rendered judgment for the defendants], stating that 'the plaintiff did not place the action in the hands of the marshal until May 22, 2017. Because the plaintiff suffered actionable harm—the fall and injuries—on February 10, 2015, she should have brought the action on or before February 10, 2017. Having received a ninety day extension . . . the suit should have been initiated on or before May 10, 2017. Having failed to initiate this action within the applicable statute of limitations, the action is time barred.' " (Footnote added; footnotes omitted.) *Peek* v. *Manchester Memorial Hospital*, 193 Conn. App. 337, 339–41, 219 A.3d 421 (2019).

The plaintiff appealed from the judgment of the trial court. On appeal to the Appellate Court, the plaintiff asserted "that she submitted evidence in opposition to the defendants' motion for summary judgment that show[ed] that she did not discover her 'injury' for purposes of § 52-584 until April 6, 2015. She argue[d] that actionable harm occurred on April 6 when she learned that the defendants' negligence had caused her injury." Id., 345.

The Appellate Court reversed the judgment of the trial court. Id., 348. In doing so, the Appellate Court construed the term "injury" for purposes of § 52-584 consistent with this court's decision in *Lagassey* v. *State*, 268 Conn. 723, 747–49, 846 A.2d 831 (2004). The Appellate Court noted that, in *Lagassey*, this court

explained that, as used in § 52-584, "the term 'injury' is synonymous with 'legal injury' or 'actionable harm.' 'Actionable harm' occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action." Id., 748; see *Peek* v. *Manchester Memorial Hospital*, supra, 193 Conn. App. 345 (quoting *Lagassey*). This court also explained that "actionable harm does not occur until the plaintiff discovers or should have discovered that the harm complained of *was caused by the negligence of the defendant*." (Emphasis in original.) *Lagassey* v. *State*, supra, 747; accord *Peek* v. *Manchester Memorial Hospital*, supra, 346 (quoting *Lagassey*).

Applying this court's interpretation of § 52-584 from *Lagassey*, the Appellate Court concluded that "the evidence before the trial court demonstrated a genuine issue of material fact as to when the plaintiff discovered her injury as contemplated by § 52-584 . . . ." *Peek* v. *Manchester Memorial Hospital*, supra, 193 Conn. App. 339. Accordingly, the Appellate Court concluded that the trial court should not have granted the defendants' motion for summary judgment, and it reversed the judgment of the trial court. Id., 348.

Thereafter, the defendants sought certification to appeal, which we granted, limited to the following issue: "Did the Appellate Court correctly conclude that there existed a genuine issue of material fact as to whether the plaintiff's action was barred by the two year statute of limitations set forth in . . . § 52-584?" *Peek* v. *Manchester Memorial Hospital*, 334 Conn. 906, 220 A.3d 801 (2019).

On appeal to this court, the defendants assert that the Appellate Court misapplied this court's precedent under § 52-584 to the facts of the present case and relied on the immaterial fact of when the plaintiff became aware that the defendants were responsible for her safety. They further argue that this court should construe § 52-584 consistent with the plain meaning rule of General Statutes § 1-2z, and that such a construction would require reversal of the judgment of the Appellate Court. We disagree and, accordingly, affirm the judgment of the Appellate Court.

"The scope of our appellate review depends [on] the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Ugrin* v. *Cheshire*, 307 Conn. 364, 389, 54 A.3d 532 (2012). In the present case, the trial court granted the defendants' motion for summary judgment on the ground that the plaintiff failed to demonstrate a genuine issue of material fact regarding whether she initiated this action within two years of suffering an "injury," as required by § 52-584. To

the extent that determining whether summary judgment was appropriate in this case is based on interpreting § 52-584, our review is plenary. See, e.g., *Shoreline Shellfish, LLC* v. *Branford*, 336 Conn. 403, 410, 246 A.3d 470 (2020).

Before addressing the defendants' specific arguments, we lay out this court's long-standing interpretation of the term "injury" for purposes of § 52-584. We begin with the statutory language. General Statutes (Rev. to 2015) § 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a . . . hospital . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . ."

In considering the meaning of the term "injury" for purposes of § 52-584, however, we do not write on a clean slate. In 2004, in *Lagassey*, this court took the "opportunity to *restate* the correct legal standard by which to evaluate the timeliness of causes of action in negligence." (Emphasis added.) *Lagassey* v. *State*, supra, 268 Conn. 748. Relying on a case that dated back to 1986, this court explained that "[t]he limitation period for actions in negligence begins to run on the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. See General Statutes §§ 4-148 (a)[3] and 52-584. In this regard, the term 'injury' is synonymous with 'legal injury' or 'actionable harm.' 'Actionable harm' occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action. . . . A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence; they are therefore necessary ingredients for ' "actionable harm." ' . . . Furthermore, 'actionable harm' may occur when the plaintiff has knowledge of facts that would put a reasonable person on notice of the nature and extent of an injury, and that the injury was caused by the negligent conduct of another." (Citations omitted; footnote added.) *Lagassey* v. *State*, supra, 748–49, quoting *Catz* v. *Rubenstein*, 201 Conn. 39, 44, 47, 513 A.2d 98 (1986). In discussing the term "injury," this court further explained that it has "repeatedly stated that 'an injury occurs when a party suffers some form of actionable harm.' . . . This court first used the term 'actionable harm' in 1984, in *Burns* v. *Hartford Hospital*, [192 Conn. 451, 460, 472 A.2d 1257 (1984)]." (Citations omitted.) *Lagassey* v. *State*, supra, 739.

After *Lagassey*, this court has uniformly reaffirmed the definition of "actionable harm." See, e.g., *Kelly* v. *University of Connecticut Health Center*, 290 Conn.

245, 255, 963 A.2d 1 (2009) ("The discovery of the presence of a foreign object in the body of a person who recently has undergone a medical procedure presupposes discovery of the 'essential elements of a cause of action in negligence,' as required by the standard this court articulated in *Lagassey* v. *State*, supra, 268 Conn. 748. Thus, when the plaintiff discovered the presence of the laser fibers sometime in 2000, he became aware of actionable harm within the meaning of § 4-148 and the one year limitation period began to run."); *Tarnowsky* v. *Socci*, 271 Conn. 284, 297, 856 A.2d 408 (2004) (relying on definition of "actionable harm" from *Lagassey* and concluding that "the two year statute of limitations set forth in § 52-584 does not begin to run until a plaintiff knows, or reasonably should have known, the identity of the tortfeasor"). Our case law is thus quite clear that "injury," as used in § 52-584, means actionable harm, i.e., when the plaintiff discovers or should have discovered that the harm complained of was caused by the negligence of the defendant.

Understanding that this court has consistently construed the term "injury" to mean "actionable harm," we turn to the facts of the present case. Here, it is undisputed that the plaintiff fell on February 10, 2015, while a patient at Manchester Memorial Hospital. It is also undisputed that she knew that she fell and that she knew she suffered some physical harm as a result of that fall. On the basis of those facts, the defendants filed a motion for summary judgment, claiming that the plaintiff's claims were barred by the statute of limitations set forth in § 52-584. Specifically, the defendants asserted that "the plaintiff claims that she suffered injuries as a result of a fall that occurred on February 10, 2015, when she was a patient at [Manchester Memorial Hospital]. Because there is no issue of material fact that the plaintiff delivered the writ, summons and complaint to the state marshal for service on May 22, 2017, beyond the applicable statute of limitations set forth in . . . § 52-584, the plaintiff is barred from bringing these claims as a matter of law."

In response, the plaintiff submitted an opposition to the defendants' motion for summary judgment, asserting that she "was not aware that the defendants' conduct or lack thereof was the cause of her injury until . . . April 6, 2015." In support of her opposition, the plaintiff submitted an affidavit. In that affidavit, the plaintiff averred that "I was unaware [on February 10, 2015], what was the cause of my fall." The plaintiff further averred that, "[o]n or about April 6, 2015, staff at the . . . doctor's office informed me [that] a nurse or nurse's aide should have been responsible for my safety while inpatient at [Manchester Memorial Hospital]."

In considering the plaintiff's claim, it is important to note that "the determination of when a plaintiff in the exercise of reasonable care should have discovered

'actionable harm' is ordinarily a question reserved for the trier of fact." *Lagassey* v. *State*, supra, 268 Conn. 749; see, e.g., *Taylor* v. *Winsted Memorial Hospital*, 262 Conn. 797, 810, 817 A.2d 619 (2003) ("because the determination of reasonable care is a question of fact, it was up to the jury to determine whether the plaintiff exercised reasonable care in the discovery of his injury").

Furthermore, as we explained previously in this opinion, "actionable harm does not occur until the plaintiff discovers or should have discovered that the harm complained of *was caused by the negligence of the defendant.*" (Emphasis in original.) *Lagassey* v. *State*, supra, 268 Conn. 747. Bearing in mind that a court, in deciding a motion for summary judgment, must view the facts in the light most favorable to the nonmoving party, the fact that the plaintiff averred that she did not know the cause of her fall or that the defendants were responsible for her safety while she was inpatient at Manchester Memorial Hospital until April 6, 2015, is sufficient to create a genuine issue of material fact regarding when her actionable harm occurred.

The defendants did not submit any evidence in support of their motion for summary judgment establishing that the plaintiff's representation in this regard could not have been credited by a reasonable fact finder. Indeed, the defendants submitted no evidence to contradict her representation on this point. Because the determination of when a plaintiff in the exercise of reasonable care should have discovered actionable harm is ordinarily a question reserved for the trier of fact, we cannot conclude that the Appellate Court incorrectly determined that there was a genuine issue of material fact. In other words, at this early stage of the proceedings, and without other evidence from the defendants, we cannot conclude that the plaintiff's statement that she did not know the causal connection between her physical harm and the negligence of the defendants until April 6, 2015, was unreasonable as a matter of law.

With this background in mind, we now turn to the defendants' specific claims in the present case. The defendants first assert that the Appellate Court "relied on an immaterial fact," namely, the fact that "the plaintiff was told on April 6, 2015, that [the defendants] were responsible for her safety." The defendants assert that this is not a material fact, but a specific legal theory. We disagree.

As we explained in this opinion, this court has consistently concluded that the plaintiff's knowledge of the causal connection between the defendants' alleged negligence and her physical harm is a material fact because it begins the accrual of the statute of limitations under § 52-584. Therefore, without knowledge of the causal connection to the defendants' negligence, the plaintiff did not experience any actionable harm. Accordingly,

we conclude that the Appellate Court properly relied on the fact that there was a genuine issue of material fact regarding when the plaintiff knew that her physical harm was a result of the defendants' negligence.

The defendants next claim that the Appellate Court misapplied this court's precedent to the facts of this case. Specifically, the defendants claim that the Appellate Court improperly applied what the defendants call failure to diagnose or latent injury cases to the facts of this case because the plaintiff's physical injuries were obvious. We disagree.

Nothing in *Lagassey* or its progeny indicates that *Lagassey*'s definition of "actionable harm" is only applicable to some actions for negligence. To the contrary, that definition is applicable to all actions subject to § 52-584, regardless of whether the physical harm is obvious or latent. As we have explained, the statute of limitations begins to run, not when the plaintiff knows that she has suffered a physical harm, but when she knows that the physical harm suffered "was caused by the negligent conduct of another." *Lagassey* v. *State*, supra, 268 Conn. 749. There may be many instances in which a plaintiff's actual or constructive knowledge of causation and negligence will arise at the same time as her knowledge that she has sustained physical harm. In those cases, the statute of limitations begins to run immediately, not because the injury is obvious but, rather, because the plaintiff is aware of both the injury and the defendant's negligence.

Nevertheless, there are also times when a plaintiff may know that she has suffered physical harm, but she may not know that the harm was caused by the negligent conduct of another. In those cases, the statute of limitations does not begin to run until the plaintiff discovers or reasonably should have discovered that the defendant's negligence was the cause of her harm. The definition of "actionable harm" is applicable to both scenarios.

A review of *Catz* v. *Rubenstein*, supra, 201 Conn. 39, exemplifies this principle. *Catz* involved a medical malpractice action in which the coexecutors of the estate of the decedent, Elaine S. Foster, claimed that the defendant physician, Stephen R. Rubenstein, failed to properly diagnose Foster's breast cancer. See id., 40, 41. The trial court granted Rubenstein's motion for summary judgment on the ground that the action was time barred under the applicable statute of limitations because Foster did not initiate it within two years of her cancer diagnosis. See id., 40–41.

In that case, Foster "consulted . . . Rubenstein, a physician who practiced general internal medicine," in July, 1979. Id., 40. During a physical exam, Rubenstein noted a lump in Foster's breast and ordered a mammogram. Id. Thereafter, "[i]n early August, 1979, [Rubenstein]

informed Foster that the mammogram was negative for cancer . . . ." Id.

In January, 1980, Foster discovered another lump and spoke to Rubenstein on the telephone, and Rubenstein told her "she had a propensity to fatty tissue, that he did not think it was anything serious, and that there was no cause for concern." Id., 40–41. In April, 1980, Foster again contacted Rubenstein because one of the lumps had become larger. Id., 41. On April 21, 1980, Rubenstein examined Foster for the second time and ordered another mammogram, which indicated a malignancy. Id. By May, 1980, Foster was diagnosed with cancer. See id.

In April, 1982, Foster sought treatment from Horace Stansel of the Yale Medical School. See id., 42. At that point, Stansel informed Foster that, at the time she was examined by Rubenstein in August, 1979, she had cancer in her left breast. See id.

Thereafter, Foster commenced an action for medical malpractice on June 11, 1982. Id., 41. Specifically, she claimed that Rubenstein "negligently failed to prescribe or recommend further diagnostic tests or treatment for Foster and negligently failed to obtain the opinion of or refer her to a physician who specialized in the recognition and treatment of potential malignancies." Id. Rubenstein filed a motion for summary judgment, asserting that the claims were barred under § 52-584 because they were not brought within two years from the date Foster was diagnosed with cancer. See id., 40– 41. The trial court granted Rubenstein's motion for summary judgment, and the coexecutors, who were substituted as plaintiffs after Foster died, appealed. See id.

The coexecutors conceded that Foster became aware of her cancer diagnosis in May, 1980. See id., 41–42. Nevertheless, they asserted "that there was no evidence submitted with [Rubenstein's] motion for summary judgment and no facts established that showed when Foster discovered or in the exercise of reasonable care should have discovered that she had cancer in her left breast when she was initially examined and diagnosed by Rubenstein or that her condition at that time was related to the cancer discovered on May 1, 1980. The [coexecutors] claim[ed], on appeal, that Foster first became aware of that possibility when she was advised to that effect by . . . Stansel . . . in April, 1982, and that she did not therefore discover her 'injury' until that date." Id., 42.

This court agreed with the coexecutors, explaining that "[Rubenstein's] affidavit and the other documents submitted in support of his motion for summary judgment pinpoint when [Rubenstein] examined Foster and initially diagnosed her condition and when she became aware that she had cancer. They do not, however, dis-

close when Foster discovered or in the exercise of reasonable care should have discovered that [Rubenstein] was negligent in his examination, diagnosis, and treatment and the causal nexus, if any, between his alleged negligence and the metastasis of her cancer. [Thus, there remained] a genuine issue of material fact [that] was not resolved and the trial court erred in granting [Rubenstein's] motion for summary judgment." Id., 44.

Similar to *Catz*, in the present case, although the plaintiff knew that she suffered physical harm when she fell on February 10, 2015, it was not until April 6, 2015, that she discovered the causal nexus between the defendants' alleged negligence and her injuries from the fall. At this preliminary, summary judgment stage, we do not know whether this delay in discovering actionable harm was reasonable, but, considering the facts in the light most favorable to the nonmoving party, we conclude that the Appellate Court properly applied this court's precedent and the "actionable harm" standard to the facts of this case.

The defendants assert that the present case is more similar to *Burns* v. *Hartford Hospital*, supra, 192 Conn. 451, and that the Appellate Court should have applied *Burns* to the facts of the present case. We disagree. *Burns* is distinguishable based on the pivotal fact that, in that case, the minor plaintiff, Bryan Burns, and his mother, Barbara Burns, who brought the action on Bryan's behalf, were made aware of the connection between the physical harm and the defendants' negligence approximately three years before the action was commenced. See id., 456–57.

Bryan had been admitted to the defendant hospital on October 23, 1975, for treatment of injuries to his upper body and torso that he had suffered in an automobile accident. Id., 452. While in the hospital, he required intravenous fluids, which were administered through intravenous tubes that were inserted in his lower legs. Id.

During his hospital stay, Bryan began to experience pain, redness and swelling in one of his legs, near the area where the intravenous tubes were inserted. See id. On or about November 10, 1975, Ronald W. Cooke, Bryan's physician, diagnosed Bryan with a streptococcus infection and told his mother, Barbara Burns, that the infection was caused by the use of contaminated intravenous tubes. Id., 452–53. Cooke informed Barbara that Bryan's infection "had probably reached the muscle and had possibly reached the bone as well." Id., 453. Cooke also told Barbara that the infection could be treated with antibiotics and would heal fully in time. See id., 453, 459.

After Bryan was released from the hospital and began walking again, his gait progressively worsened, and his

left foot and calf were not growing properly. See id., 453. Eventually, in August, 1977, Barbara took Bryan to another physician, who diagnosed him as having a buildup of scar tissue caused by the streptococcus infection, which was impeding muscle development. Id.

Thereafter, in November, 1978, Barbara, on behalf of Bryan, brought an action against Hartford Hospital and Cooke, alleging that they acted negligently in failing to diagnose accurately and treat properly the infection in his leg. See id., 452–53. The defendants moved for summary judgment, claiming that the action was barred by the statute of limitations set forth in § 52-584 because it was brought more than two years after Barbara became aware that Bryan suffered an infection from the contaminated intravenous tubes and that the buildup of scar tissue was just a manifestation of that infection. See id., 453–54.

The trial court rendered summary judgment in favor of both Hartford Hospital and Cooke on the ground that the action was barred by the statute of limitations. See id., 454. The only issue on appeal to this court was whether the claim against Hartford Hospital—for its negligence in causing the infection—was barred by the statute of limitations. Id.

On appeal, this court considered Barbara's assertion, in her affidavit in opposition to Hartford Hospital's motion for summary judgment, that she did not discover Bryan's injury until August, 1977, because it was not until then that she was informed that there was muscle damage in his leg. Id., 456. It also considered Barbara's assertion, during her deposition, that "she delayed bringing suit against Hartford Hospital because she relied on [Cooke's] prognosis of complete recovery from the infection." Id., 458.

This court rejected Barbara's claims, explaining that "Cooke's alleged misdiagnosis . . . did not toll the statute of limitations as it applied to Hartford Hospital. The injury that [Barbara] attributes to the hospital's negligence, i.e., the streptococcus infection, was inflicted and discovered in November, 1975. At that point the hospital's alleged breach of duty was complete. [Barbara] has not alleged that the hospital staff in any way concealed the extent of the injury or misled her about its cause. The act of an independent intervening third party, who may have misled [Barbara] about the injury's seriousness or even compounded the harm by failing to render effective treatment, cannot extend the hospital's liability beyond the statutory limitation period." (Footnote omitted.) Id., 459.

This court further explained that § 52-584 "requires that the injured party bring suit within two years of discovering the injury. . . . In this context an injury occurs when a party suffers some form of actionable harm. The harm need not have reached its fullest mani-

festation before the statute begins to run. Because [Barbara] did not bring suit within two years of discovering the injury, the trial court correctly ruled that the action was barred by the statute of limitations." (Citation omitted.) *Burns* v. *Hartford Hospital*, supra, 192 Conn. 460.

The defendants in the present case attempt to liken the facts of the present case to the facts of *Burns*, claiming that, in both cases, there were "obvious injuries," and, therefore, that the statute of limitations begins to run at the time the physical harm is sustained. We disagree. *Burns* is distinguishable from the present case because, in *Burns*, Barbara knew of both the physical harm and the causal connection to the defendants' negligence more than two years prior to initiating the action. As this court explained, "[b]y about November 10, 1975, [Barbara] became fully aware not only of Bryan's injury but also of its cause. She testified in her deposition that on or about November 10 [1975], [Cooke] told her that [one of Bryan's legs] was infected and that the infection was caused by contaminated intravenous tubes that hospital staff had placed in the leg . . . ." *Burns* v. *Hartford Hospital*, supra, 192 Conn. 456. Therefore, Barbara was informed that the physical harm to Bryan—the streptococcus infection—was caused by the defendants' negligence—use of contaminated intravenous tubes—on November 10, 1975, but the action in *Burns* was not brought until November, 1978. See id., 452, 456.

In *Burns*, Barbara admitted that she was informed of the hospital's negligence on November 10, 1975, which was more than two years before the action was commenced. Unlike in *Burns*, the plaintiff in the present case alleged in her affidavit that she did not become aware of the defendants' alleged negligence until April 6, 2015, which—after factoring in the ninety day extension—was less than two years before she brought her medical malpractice action.

We reject the defendants' contention that there are two separate standards for negligence claims, depending on whether the harm is latent or obvious. Instead, we agree with the Appellate Court that this court has consistently defined "injury" as actionable harm for purposes of § 52-584, and that actionable harm requires both knowledge of the physical harm and knowledge of its connection to the defendants' negligence. Accordingly, we conclude that the Appellate Court properly applied this court's precedent to the facts of the present case.

Finally, the defendants assert that the plain meaning of § 52-584 supports the judgment of the trial court in the present case. The defendants claim that, when this court decided *Lagassey*, it failed to follow the plain meaning rule codified in § 1-2z. Specifically, the defendants claimed that, because § 1-2z became effective on October, 1, 2003, and *Lagassey* was decided thereafter,

on May 4, 2004, the court was required to, but improperly neglected to, apply the plain meaning rule of § 1-2z when it interpreted the language in § 52-584. Accordingly, the defendants assert that this court should abandon the interpretation of "injury" adopted in *Lagassey* in favor of a new interpretation of the term "injury," in which this court would follow the plain meaning rule of § 1-2z. They contend that the plain meaning rule would dictate that we interpret the term "injury" in § 52-584 to mean " 'hurt, damage, or loss sustained,' " as it is defined in the dictionary. We disagree.

In *Lagassey*, this court was interpreting the statute of limitations set forth in § 4-148 (a), and it recognized that our interpretation of "injury" for purposes of § 52-584 was relevant to that interpretation.[4] At the time this court decided *Lagassey*, this court already had a rich history of interpreting "injury" for purposes of both §§ 4-148 (a) and 52-584. Indeed, this court had repeatedly addressed the commencement of the statutes of limitations contained in §§ 4-148 (a) and 52-584 well before § 1-2z came to be. Thus, in point of fact, the court in *Lagassey* was not interpreting the term "injury" anew in 2004.

In fact, *Lagassey* transparently explained that "we have repeatedly stated that an injury occurs when a party suffers some form of actionable harm"; (internal quotation marks omitted) *Lagassey* v. *State*, supra, 268 Conn. 739; see id. (citing cases); meaning "the plaintiff discovers an injury *and* causation." (Emphasis in original.) Id., 743; see, e.g., *Burns* v. *Hartford Hospital*, supra, 192 Conn. 460 ("[i]n [the context of § 52-584] an injury occurs when a party suffers some form of actionable harm"); see also, e.g., *Catz* v. *Rubenstein*, supra, 201 Conn. 44 (limitation period accrues on date plaintiff discovered or should have discovered "causal nexus" between alleged negligence and subsequent injury). Indeed, *Lagassey* merely reaffirmed this court's interpretation of "injury" for purposes of §§ 4-148 (a) and 52-584 as "actionable harm" by reviewing this court's prior cases in which the term "injury" had been interpreted.

We see no reason to abandon this court's long held interpretation of the term "injury," which dates back to 1984, simply because the legislature later enacted § 1-2z. We previously have addressed the issue of whether the passage of § 1-2z required us to abandon prior interpretations of statutes in order to comply with § 1-2z. In addressing that question, we have determined that we do not abandon prior interpretations of statutory language. Rather, even after the passage of § 1-2z, it is customary for us to begin with this court's prior interpretations of statutes in previous cases. See, e.g., *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007). To be sure, in *Hummel*, we explained: "There is nothing in the legislative history

[of § 1-2z] to suggest that the legislature also intended to overrule every other case in which our courts, prior to the passage of § 1-2z, had interpreted a statute in a manner inconsistent with the plain meaning rule, as that rule is articulated in § 1-2z. We are unwilling to impute to the legislature such a sweeping purpose in the absence of convincing evidence of that purpose. Because neither the language nor the legislative history of § 1-2z provides any such evidence, we conclude that § 1-2z does not overrule our prior case law . . . ." Id.

In other words, after the passage of § 1-2z in 2003, our courts were directed to interpret statutes in accordance with the plain meaning rule embodied in § 1-2z, unless the statute being interpreted had been interpreted previously by this court prior to the passage of § 1-2z.[5] The term "injury" in § 52-584 had already been interpreted well before the passage of § 1-2z.

As the court noted in *Lagassey*, prior to that case, this court had "repeatedly stated that 'an injury occurs when a party suffers some form of actionable harm.' . . . This court first used the term 'actionable harm' in 1984, in *Burns* v. *Hartford Hospital*, supra, [192 Conn.] 460." (Citations omitted.) *Lagassey* v. *State*, supra, 268 Conn. 739. We elaborated further on the meaning of actionable harm two years later, in 1986, when we decided *Catz*. See *Catz* v. *Rubenstein*, supra, 201 Conn. 45–47.

Accordingly, in *Lagassey*, this court did not reach a new interpretation of the meaning of "injury" for purposes of §§ 4-148 (a) and 52-584. This court already had construed § 52-584 in its previous cases, and, in *Lagassey*, it simply restated and followed that long held construction. In fact, any doubt on this point is extinguished by this court's decision in *Lagassey* itself, in which this court explicitly stated that "we take this opportunity to *restate the correct legal standard* by which to evaluate the timeliness of causes of action in negligence." (Emphasis added.) *Lagassey* v. *State*, supra, 268 Conn. 748. That standard is actionable harm.

It has been more than thirty-five years since the term "injury" was first defined as actionable harm by this court in *Burns* v. *Hartford Hospital*, supra, 192 Conn. 460, and approximately eighteen years since this court reaffirmed the construction in *Lagassey* v. *State*, supra, 268 Conn. 739. During that time, our courts, including this court, have repeatedly relied on the interpretation of the term "injury" as actionable harm, and the legislature has not sought to correct that construction of §§ 4-148 (a) and 52-584. Thus, the doctrine of stare decisis and the tenet of statutory interpretation that cautions against overruling case law involving our construction of a statute, if the legislature reasonably may be deemed to have acquiesced in that construction, counsel against accepting the defendants' invitation to revisit *Lagassey*'s interpretation of §§ 4-148 (a) and 52-584. See, e.g.,

*Hummel* v. *Marten Transport, Ltd.*, supra, 282 Conn. 494–95 ("[o]nce an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision" (internal quotation marks omitted)). Accordingly, we reject the defendants' invitation to implicitly overrule *Lagassey* in order to apply the plain meaning rule.

Even if we agreed with the defendants that we should not rely on *Lagassey* but should instead interpret § 52-584 consistent with § 1-2z, we would reach the same result. The term "injury" in § 52-584 is used within the phrase "when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . ." General Statutes (Rev. to 2015) § 52-584. Thus, we would conclude that, as used within that statutory phrase, the term "injury" is not clear and unambiguous. There are two plausible interpretations. On one hand, the term could mean "actionable harm," as this court has previously interpreted the term for purposes of § 52-584. On the other hand, injury could mean "hurt, damage, or loss," as the defendants assert. (Internal quotation marks omitted.) Accordingly, we would need to turn to the legislative history of the statute and to engage in much of the same analysis that this court did in *Catz*. See *Catz* v. *Rubenstein*, supra, 201 Conn. 45–47. After reviewing the legislative history, the court in *Catz* concluded that the term "injury," in this context, means "actionable harm . . . ." (Internal quotation marks omitted.) Id., 49. We agree with that conclusion.

Prior to 1957, the statutory predecessor to § 52-584 provided: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, chiropodist, chiropractor, hospital or sanatorium, shall be brought but within one year from the date of the act or omission complained of, except that a counter-claim may be interposed in an action which has been brought within the year at any time before the pleadings in such action are finally closed." General Statutes (1949 Rev.) § 8324.

In 1957, the legislature enacted No. 467 of the 1957 Public Acts, which replaced the language "of the act or omission complained of" with "when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ." In *Catz*, this court explained: "The testimony in 1957 before the General Law Committee of the legislature, which considered the predecessor to § 52-584,

indicates that the use of the term 'injury' was a conscious reaction to, and an attempt to alleviate the draconian effect of, two cases, *Dincher* v. *Marlin Firearms Co.*, 198 F.2d 821 (2d Cir. 1952), and *Vilcinskas* v. *Sears, Roebuck & Co.*, 144 Conn. 170, 174, 127 A.2d 814 (1956). In those cases, the United States [Court of Appeals for the Second Circuit] and this court concluded that the language 'act or omission complained of' in [the statutory predecessor to § 52-584] required a holding that the statute of limitations began running on the date of the defendant's negligence and that a plaintiff's cause of action could be barred before the plaintiff suffered any harm and therefore before a cause of action had accrued." (Footnote omitted.) *Catz* v. *Rubenstein*, supra, 201 Conn. 46.

The legislative history of § 52-584 also reveals that, when testifying in favor of the passage of No. 467 of the 1957 Public Acts before the General Law Committee, Attorney Charles Hunt testified that the act, "[i]t seems to me in keeping with the traditional thinking of [s]tatutes of [l]imitation[s], the time ought to begin to run at the time that the injured person acquires his right of action . . . ." Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1957 Sess., p. 145. Therefore, the legislative history of § 52-584 supports this court's prior conclusion that "injury," as used in § 52-584, was intended to mean a legally recognized injury, not just physical hurt or loss, as the defendants assert.

Moreover, the fact that the legislature removed the "act or omission complained of" language from the statute of limitations, but not from the three year statute of repose portion of the statute, is further evidence that the legislature intended for the starting point of the statute of limitations to be something other than the "hurt, damage, or loss." (Internal quotation marks omitted.) Accordingly, even if we ignore *Lagassey* and, instead, apply § 1-2z to § 52-584, we would reach the same interpretation of § 52-584 as this court reached in *Lagassey*.

On the basis of the foregoing, we conclude that the Appellate Court correctly concluded that, viewing the facts in the light most favorable to the plaintiff, there is a genuine issue of material fact. Therefore, the Appellate Court properly reversed the judgment of the trial court.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* This case was argued before a panel of this court consisting of Chief Justice Robinson and Justices McDonald, D'Auria, Mullins, Kahn and Ecker. Justice D'Auria has since been removed from the panel.

** February 2, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes (Rev. to 2015) § 52-584 provides in relevant part that "[n]o action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor,

hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . ."

Hereinafter, unless otherwise indicated, all references to § 52-584 in this opinion are to the 2015 revision of the statute.

[2] General Statutes (Rev. to 2015) § 52-190a (b) provides in relevant part: "Upon petition to the clerk of the court where the civil action will be filed to recover damages resulting from personal injury or wrongful death, an automatic ninety-day extension of the statute of limitations shall be granted . . . ."

Hereinafter, all references to § 52-190a in this opinion are to the 2015 revision of the statute.

[3] Although § 4-148 (a) was the subject of a technical amendment in 2016; see Public Acts 2016, No. 16-127, § 7; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[4] "A plain reading of §§ 4-148 (a) and 52-584 reveals that the statutes are alike in most material respects. Both statutes provide that the limitation period begins to run when a plaintiff either sustains or discovers the injury or, in the exercise of reasonable care, should have discovered the injury, and both statutes contain a three year period of repose. The only material differences in the two statutes are that § 4-148 (a) allows for a one year limitation period [whereas] § 52-584 allows for a two year limitation period, and § 4-148 (a) relates only to actions against the state brought under chapter 53 of the General Statutes." *Lagassey* v. *State*, supra, 268 Conn. 738–39.

[5] Of course, if the statutory language has been amended since this court's prior interpretation, or if the portion of the statute that is at issue has not already been subject to this court's interpretation prior to the passage of § 1-2z, then § 1-2z must be applied.